UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YANI REZNIKOV,

                              Petitioner,

                     - against -

JOSEPH DAVID, Superintendent, Greene
Correctional Facility, and ANDREW M. CUOMO,[1]
Attorney General of the State of New York,

                              Respondents.
------------------------------------------------------------X
MAUSKOPF, United States District Judge.

**MEMORANDUM & ORDER**

05-CV-1006 (RRM)
05-CV-1008 (RRM)

      Habeas corpus petitioner Yani Reznikov challenges convictions obtained by guilty pleas to New York State Indictment Numbers 5143/2001 and 8188/2001. Reznikov alleges that those pleas resulted from an unconstitutional deprivation of his Sixth Amendment right to effective assistance of counsel. For the reasons stated below, habeas corpus relief is DENIED and each of the federal habeas petitions is DISMISSED.

## BACKGROUND

      On February 28, 2002, Reznikov pled guilty to Criminal Possession of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.16[6]) (the "Possession Charge"), a class B felony. On March 22, 2002, Reznikov pled guilty to Criminal Sale of a Controlled Substance in the Second Degree (N.Y. Penal Law § 220.41[1]) (the "Sale Charge"), a class A-II felony. Those pleas were respectively entered in satisfaction of Kings County indictment numbers 5143/2001 (the "5143 Indictment") and 8188/2001 (the "8188 Indictment"). Reznikov's appointed attorney, John M. Burke, Esq., negotiated sentences of one to three years for the

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), New York Attorney General Andrew M. Cuomo is substituted for his predecessor, Eliot Spitzer.

Possession Charge (the "5143 Conviction"), and four-and-a-half years to life for the Sale Charge (the "8188 Conviction"), both sentences to run concurrently.

On August 20, 2003, pursuant to Criminal Procedure Law (the "CPL") § 440.10, Reznikov filed separate vacatur motions against each conviction (respectively, the "5143 Motion" and "8188 Motion"). Each motion alleged Burke's ineffectiveness in the plea negotiation process; namely, that Burke (1) failed to investigate the criminal charges or adequately prepare Reznikov's case, which failure allegedly precluded an "agency" or "entrapment" defense in connection with the 8188 Conviction, and waived any basis to challenge a search warrant underlying the 5143 Conviction;[2] (2) failed to investigate Reznikov's prior history of narcotics addiction, foreclosing drug treatment as an alternative to incarceration; (3) failed to seek consolidation of the 5143 and 8188 Indictments; (4) failed to secure any benefit for the waiver of Reznikov's appeal rights; and (5) failed to advise Reznikov about the immigration consequences of his pleas.

The 5143 Motion and the 8188 Motion were reviewed separately by the respective judges imposing sentence in each case, and in each case were denied in their entirety.

In a Decision and Order entered December 3, 2003, New York Supreme Court Justice Betsy Barros found no basis for an ineffective assistance claim, finding that any "contention that [Reznikov's] plea was obtained in derogation of his constitutional rights [was] unsupported by the record." In denying Reznikov's claim, Justice Barros considered the factual circumstances of that plea, including its knowing and voluntary nature, the "advantageous" nature of the plea agreement, and the strength of the prosecution's evidence. In a separate Decision and Order

---

[2] The 5143 and 8188 Motions were virtually identical in their allegations of ineffective assistance, save for the fact that the 5143 Motion made reference to a search warrant, an argument applicable only to the 5143 Conviction, while the 8188 Motion additionally referred to possible defenses applicable only to the 8188 Conviction.

entered May 27, 2004, Justice Neil Jon Firetog similarly dismissed in its entirety Reznikov's nearly-identical 8188 Motion. In so doing, Justice Firetog rejected, among other things, Reznikov's renewed claims concerning (1) Burke's failure to seek consolidation of the indictments, (2) the alleged failure to consider Reznikov's drug abuse history, and (3) the alleged failure to advise Reznikov of the immigration consequences of his guilty pleas. Finally, the court summarily rejected Reznikov's remaining contentions as meritless.[3]

On February 22, 2005, Reznikov timely filed the instant habeas corpus petitions.[4] In sum and substance, the petitions are identical and allege ineffective assistance of counsel on the very same grounds articulated in Reznikov's unsuccessful state court vacatur motions. See Petition 05-cv-1008 at 4-5; Petition 05-cv-1006 at 4-5.

## DISCUSSION

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), establishes a deferential standard that federal courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d).

The statute provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] The Appellate Division denied leave to appeal the dismissal of either vacatur decision. See 05-cv-1008, Resp's Ex. A, Part 1, Ex. F, Decision & Order on Application, entered September 20, 2004 by Hon. David R. Ritter; 05-cv-1006, Resp's Ex. A, Part 1, Ex. F, Decision & Order on Application, dated March 25, 2004 by Hon. Barry A. Cozier.

[4] Petition 05-cv-1008 challenges the 5143 Conviction. Petition 05-cv-1006 challenges the 8188 Conviction.

3

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Reznikov objects to the application of AEDPA deference on several grounds. Generally, Reznikov alleges that both Justices Barros and Firetog gave short-shrift to his ineffective assistance of counsel arguments and that, due to insufficient analysis, neither decision constitutes a merits-based adjudication under AEDPA. Alternatively, Reznikov alleges that Justice Barros's decision, no matter how substantive, is nonetheless defective because it applies a legal standard that is both inapplicable to federal civil rights claims, as here, and is "contrary to," or involved "unreasonable application of," Supreme Court precedent. For these reasons, Reznikov argues that neither of the underlying state court decisions is entitled to deference, and implores this Court to now consider his ineffective-assistance claims de novo. For the reasons below, however, this Court finds that both state court decisions constitute proper, merits-based adjudications; that neither decision is contrary to or an unreasonable application of Supreme Court precedent; and that the baseless nature of Reznikov's claims merit no further analysis or investigation.

I. **Adjudication on the Merits**

Before addressing the factual specifics of Reznikov's ineffective-assistance claims, the Court first turns to threshold questions surrounding the application of AEDPA deference to the underlying state court decisions. In particular, Reznikov challenges Justice Barros's 5143 Decision claiming that it improperly analyzed his Sixth Amendment claim under New York's test for ineffective assistance of counsel, rather than the federal test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Arguing that denial of his federal claim was thus impermissibly premised on state law grounds, Reznikov contends that the state court failed to

adjudicate the merits of his federal claim as contemplated under AEDPA. On this point, Reznikov is in error.

Under AEDPA, a proper merits adjudication requires only that (a) a federal claim be raised, and (b) that it be disposed of on substantive, rather than procedural grounds. Eze v. Senkowski, 321 F.3d 110, 122 (2d Cir. 2003); Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Those requirements are satisfied here. In this case, Reznikov's respective vacatur motions apprised the relevant courts of the federal nature of his claim, and, in so doing, expressly referenced the federal standard set forth in Strickland v. Washington.[5] See Petitioner's Memorandum at 3. The resulting state court determinations each addressed the adequacy of Reznikov's ineffective-assistance claims, expressly denying those claims for lack of merit and not upon a procedural bar.

Although AEDPA does require that state court dispositions of federal claims be predicated on federal law, a state court's reliance on federal authority need not be explicit. Sellan, 261 F.3d at 312; Eze, 321 F.3d at 122; Hines v. Miller, 318 F.3d 157, 160 (2d Cir. 2003). Indeed, in the habeas context, federal courts recognize a conclusive presumption that, when presented with an express federal claim, a state court's decision rests principally upon an

---

[5] In Sellan, the Second Circuit warned of a potential for manipulation that arguably is manifest here. There the court warned, "[a] rule that would apply AEDPA deference only when a state court articulates its reasoning or cites federal law could encourage state prisoners to press their federal claims in state court in an essentially cursory manner-just enough to exhaust state remedies and to avoid default or waiver, but not too strongly – with the hope that the state court will not refer to or engage in any lengthy discussion of their federal claims, thus entitling the prisoner to de novo consideration of these claims on federal habeas review." Sellan, 261 F.3d at 314.

In this case, Reznikov's Memorandum of Law in support of his vacatur motions cites Strickland only once. Indeed, he makes express claims under the New York State Constitution and cites New York legal authority more than forty times, but refers to federal law only five times. Notwithstanding an overwhelming appeal to state law protections, Reznikov now complains that his cursorily articulated federal claims were not adequately adjudicated.

5

application of federal law even absent any express reference to federal authority.[6] See Sellan, 261 F.3d at 314; Nicholas v. Smith, No. 02-CV-6411(ARR), 2007 WL 1213417, at *3 (E.D.N.Y. April 20, 2007). Moreover, for reasons discussed more fully below, the Second Circuit has expressly held that where, as here, a state court's analysis of a Sixth Amendment claim references only New York's ineffective-assistance standard, the resulting determination nonetheless constitutes an AEDPA-sufficient "merits" adjudication entitled to deference. Eze, 321 F.3d at 123.

Indeed, for AEDPA purposes, a state court may properly employ New York's legal standard to dispose of federal ineffective-assistance claims because, on this issue, New York law and federal law are in accord. Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001) (citations omitted); accord. Loliscio v. Goord, 263 F.3d 178 (2d Cir. 2001). Accordingly, the fact that Justice Barros's Decision employed New York law does not run afoul of AEDPA. In several notable decisions, including Eze v. Senkowski, supra, the Second Circuit has squarely addressed this issue; carefully comparing New York's standard to the analytical considerations established by the United States Supreme Court in Strickland. Eze, 321 F.3d 122-24. In scrutinizing the requirements of both legal standards, the Second Circuit concluded that New York's test "is not diametrically different, opposite in character or nature, or mutually opposed to Strickland." Lindstadt, at 198 (internal citations omitted); accord. Loliscio, 263 F.3d at 192-93. Thus, Reznikov's alternative argument that Justice Barros's reliance on New York's ineffective-

---

[6] In Washington v. Schriver, 255 F.3d 45 (2d Cir. 2001), it was suggested that a state court's failure to cite federal authority signaled its desire to cede de novo review of federal claims. Id. at 63. However, that view of AEDPA's requirements was not ultimately adopted. See Sellan, 261 F.3d at 314 (finding no AEDPA requirement that state courts reference federal authority in order to trigger § 2254(d)(1) deference). In Sellan, the Second Circuit held that because "[u]nder the Supremacy Clause, state courts are obligated to apply and adjudicate federal claims fairly presented to them, ... the notion that state courts may absolve themselves of their duty to decide federal questions has no basis in law." Id.

assistance standard is "contrary to" clearly established Supreme Court precedent is also without merit.

Finally, Justice Firetog applied the federal, Strickland framework to the same conduct at issue before Justice Barros. Thus, when taken together, the decisions of both state Justices are more than adequate to meet the AEDPA deference standard.

## II. Unreasonable Application of Clearly Established Federal Law

Having concluded that both state court decisions constituted proper merits adjudications and that neither decision runs afoul of AEDPA's "contrary to" clause, this Court turns to whether the relevant state court decisions involved an objectively "unreasonable application of" Strickland's two-pronged test for establishing ineffective assistance of counsel.

Demonstrating an objectively unreasonable application of the Strickland test requires more than a mere showing that a state-court applied Strickland incorrectly (see Sellan, 261 F.3d at 315); some increment beyond mere "error" is required. See Williams, 529 U.S. at 411; accord. Gilchrist v. O'Keefe, 260 F.3d 87, 94 (2d Cir. 2001). Strickland's first prong requires an inquiry into whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (applying Strickland analysis in the plea context). In making that determination, habeas courts apply a "strong presumption" that defense counsel's conduct is within the broad spectrum of reasonable professional assistance. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89). Petitioner thus bears the heavy burden of establishing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Id.

7

Under the second prong, petitioner must demonstrate that counsel's deficient conduct resulted in actual prejudice. In the plea context, petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Nicholas, 2007 WL 1213417 at *12. Neither showing is made here.

## A. Counsel's Conduct[7]

Both state courts determined that Burke's conduct did not fall below reasonable professional standards, nor was it otherwise ineffective. Thus, Reznikov failed to satisfy Strickland's necessary first prong. For the reasons set forth below, this Court finds that the state courts' rulings did not employ an objectively unreasonable application of Strickland.

1) Failure to Controvert the Search Warrant or Raise Affirmative Defenses

With respect to the Possession Charge, this Court cannot say that Burke's failure to controvert the search warrant fell outside the range of competence for criminal trial counsel, as Reznikov fails to assert, as he must, any colorable basis for controverting that warrant. Thus, on this ground, he cannot establish facts necessary to meet the first prong of the Strickland test. United States v. Cronic, 466 U.S. 648, 658 (1984) (the burden rests with the accused to demonstrate a constitutional violation).

---

[7] Reznikov's 8188 Motion to vacate included a claim that Burke violated the attorney-client privilege by responding to the allegations of ineffective assistance with an affirmation detailing his conversations with Reznikov. Justice Firetog concluded that Reznikov waived the privilege by placing at issue the sufficiency of those conversations. 8188 Decision at 2 (citing People v. Edney, 39 N.Y.2d 620, 624-625 (1976); People v. Krawitz, 151 A.D.2d 850, 851 (3rd Dep't 1989)). That claim was not reasserted in either the 1006 Petition or the 1008 Petition now before this Court, nor was it addressed in the Petitioner's Memorandum of Law. That claim is therefore not subject to review by this Court, see Ciochenda v. Artus, No. 06-CV-5057, 2008 WL 3823865, at *13 n.3 (S.D.N.Y. Aug. 15, 2008) (declining to consider claims raised in Petitioner's 440.10 motion but not asserted in habeas petition), and, in any event, has no merit, as we agree with the state court that any claim of privilege has been waived. See Mickens v. United States, 333 F. Supp. 2d 44, 49 (E.D.N.Y. 2004) (where attorney is accused of rendering ineffective assistance, he is no longer bound by the attorney-client privilege to remain silent).

8

For similar reasons, the alleged failure to assert a purported agency or entrapment defense to the Sale Charge likewise does not fall outside the range of competence required. With respect to these defenses, any deficiency in counsel's conduct turns on the defense's likelihood of success, an issue Reznikov does not address. See Panuccio v. Kelly, 927 F.2d 106, 109-10 (2d Cir. 1991) (holding that the validity of the defense informs whether counsel is under an obligation to discuss such defense with his client). Here, the record indicates that Burke did, in fact, consider such defenses, but determined that they were highly unlikely to succeed under the circumstances of the case. Burke Aff. at 4. While it is preferable for counsel to explain why defenses are unlikely to succeed, failure to do so does not fall outside the range of competence required of attorneys in criminal matters. Panuccio, 927 F.2d at 109-10; Mitchell v. Scully, 746 F.2d 951, 957 (2d Cir. 1984).

2) Failure to Consolidate the Indictments

Failure to consolidate the 5143 and 8188 Indictments was not outside the range of competence expected from trial counsel. 5143 Decision at 7; 8188 Decision at 3. The record establishes that the negotiated plea – which covered both indictments – redounded substantially to Reznikov's advantage. Here, Burke successfully negotiated the minimum available sentence on the Possession Charge, which sentence was imposed concurrently with the reduced sentence negotiated on the Sale Charge. The negotiation of concurrent sentences permitted Reznikov to avoid serving any actual jail time on the 5143 Conviction. Id. He thus cannot, and does not, argue that prejudice resulted.

3) Failure to Pursue Drug Treatment

Burke's alleged failure to pursue a drug treatment alternative to incarceration cannot support a claim of ineffective assistance. First, Burke provided uncontroverted testimony that he

9

made "diligent efforts" to locate a drug treatment program, but ultimately was unable to persuade the prosecution to agree to a non-jail disposition. Burke Aff. at ¶ 7; see also, DA's Opp. at 4. Moreover, as explained in both state court decisions, Reznikov's presumption that his drug abuse would necessarily have been a mitigating factor in sentencing is highly speculative, and, as Justice Barros noted, "would not have necessarily compelled the People, or [the] court, to disregard his active participation in illegal drug activities."[8] See 5143 Decision at 6.

4) Failure to Explain Potential Immigration Consequences

The record of the plea allocution before Justice Barros adequately demonstrates: (1) the Court's clear and express appraisal of the potential immigration consequences of a guilty plea, and (2) Reznikov's express acknowledgment that he both discussed those consequences with counsel and understood their import. See Resp's Ex. A, Pt. 1, Ex. M at 5-6.[9] Even if Reznikov's express acknowledgements had not been captured on the record, however, counsel's purported failure to explain such consequences, even if true, would not alone constitute ineffective assistance. See, e.g., United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002) (denying Strickland claim and holding, "that an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of

---

[8] The court further noted that "once [Reznikov] was sentenced on Indictment Number 8188-01, a non-jail sentence on Indictment Number 5143-01 would not have been possible." 5143 Decision at 7.

[9] The Court: Are there any immigration concerns?

Mr. Burke: Yes.

The Court: Have you discussed the ramifications of this plea with him?

Mr. Burke: Yes.

The Court: Obviously, it's a deportable offense, Mr. Reznikov. I don't know whether you will be or not, but understand that in taking this plea, there may be immigration consequences. You won't be permitted to take a felony plea back if there are immigration consequences; do you understand that?

The Defendant: Yes.

The Court: Now that I've explained the rights that you're giving up by admitting your guilt, is it still your desire to plead guilty and give up those rights?

The Defendant: Yes.

reasonableness.") (citing, United States v. Santelises ( Santelises II ), 509 F.2d 703, 704 (2d Cir.1975) (per curiam) (attorney's failure to inform a defendant that a guilty plea could result in deportation "is of no legal significance")); Alexis v. Smith, No. 03 Civ.391(SAS), 2003 WL 22434154, at *5 (S.D.N.Y. October 24, 2003).

5) Waiver of Appeal Rights

That Reznikov waived his right of appeal as a necessary condition of his plea does not give rise to an ineffective-assistance claim. Because Reznikov's appeal rights are purely a function of statute, waiver is permissible where it is knowing, voluntary and does not work a miscarriage of justice. See United States v. Fisher, 232 F.3d 301 (2d Cir. 2000); Nicholas, 2007 WL 1213417 at *9; People v. Holman, 89 N.Y.2d 876 (1996) ("To be enforceable, a waiver must be knowing, voluntary and intelligent"). In evaluating the propriety of waiver, as here, a trial court must consider the reasonableness of the bargain, its appropriateness under the circumstances, and the effect on the integrity of the judicial process. People v. Seaberg, 74 N.Y.2d 1, 11 (1989).

Upon a review of the allocution record, it is clear that Reznikov's waiver was knowingly and voluntarily given in exchange for a substantially reduced sentence:

> The Court: And, lastly, as part of the plea agreement, you have to give up your right to appeal. That means that the case ends in this Court. You're giving up your right to raise any legal issues or challenge any rulings this Court or a prior Court may have made with respect to your case. Do you understand that?
>
> The Defendant: Yes.

Resp's Ex. A, Pt. 1, Ex. M at 5-6.

The allocution record makes clear that Reznikov understood the appellate consequences of his plea, and that he was waiving his rights in that regard. Accordingly, Justice Barros

11

rejected Reznikov's claim that his appeal waiver was merely the unintelligent byproduct of Burke's unreasonable conduct. 5143 Decision at 10. Upon review of the record, and for the reasons above, this Court agrees with the state court's determination. As such, the appeal waiver was properly enforceable, and Reznikov's related <u>Strickland</u> claim is without merit. See <u>Maltsev v. Albany County Probation Dep't</u>, No. 03-CV-1309, 2005 WL 1397135, at *5 (N.D.N.Y. June 13, 2005) (applying AEDPA deference to enforce appeal waiver where 440.10 court determined that plea containing such waiver was knowing and voluntary and was not the product of ineffective assistance of counsel).

6) <u>Generalized Claims Concerning Inadequate Time for Preparation/Investigation</u>

Lastly, Reznikov's habeas petitions assert an over-arching claim that his attorney did not spend adequate time with him during his representation. Untethered to any specific claim of prejudicial result, that allegation does not suggest a cognizable departure from the range of reasonable attorney conduct contemplated in <u>Strickland</u>. Indeed, the Supreme Court in <u>Strickland</u> specifically stated that in setting standards for counsel, it was not establishing mechanical rules. <u>Strickland</u>, 446 U.S. at 696. Accordingly, Courts in this district have declined to establish any specific requirements concerning numerosity or duration of meetings between trial counsel and their clients. See <u>Hirsch v. United States</u>, No. 01 Civ. 9419(DAB), 2005 WL 2125732, at *5 (S.D.N.Y. Aug. 29, 2005) (citing <u>Byas v. Keane</u>, No. 97 Civ. 2789(SAS), 1999 WL 608787, at *5 (S.D.N.Y. Aug. 12, 1999)). Upon a review of the record, none of the particularized claims of unreasonable attorney conduct discussed above support an inference that Burke failed to properly discuss the case with Reznikov, or that his decision to plead guilty was unknowing, involuntary or otherwise the result of constitutionally insufficient information. To the contrary, the state courts found Reznikov's plea to have been based on adequate information

and rejected Reznikov's ineffective assistance claims in toto, finding all such claims to be unsupported by the record. This Court agrees.

## B. **Prejudice to the Petitioner**

Because Burke's conduct does not rise to the level of ineffective assistance under Strickland's first prong, this Court need not reach the second-prong determination of actual prejudice. See Lopez v. Artus, No. 03-cv-7087(RJH), 2005 WL 957341, at *30 (S.D.N.Y. April 25, 2005)). Even if unreasonable attorney conduct were established, however, Reznikov's necessary showing of prejudice is insufficient.

In the plea context, as here, Strickland's second, or "prejudice," requirement turns on whether counsel's established errors create a reasonable likelihood that a trial would have yielded an acquittal or a sentence significantly shorter than the plea negotiated. In other words, a defendant must show that, but for such errors, a reasonable defendant would not have pleaded guilty, but would instead have insisted on going to trial. Hill, 474 U.S. at 59. Thus, even in the plea context, the relevant prejudice inquiry focuses on the reasonable likelihood of success at trial. Id. In cases where the record establishes that counsel's errors would not reasonably have affected a trial conviction, or yielded a lesser sentence, there is no prejudice. See, e.g., Ames v. New York State Division of Parole, 772 F.2d 13 (2d Cir. 1985) (finding no prejudice in the guilty plea context where defendant failed to establish that but for counsel's errors, the criminal charges would have been disposed of more favorably than they were); Mitchell, 746 F.2d at 955; Evans v. Meyer, 742 F.2d 371, 375 (7th Cir. 1984).

In this case, an objective review of the record does not lead to the conclusion that absent Burke's alleged errors, Reznikov would have succeeded at trial, or that he would have received a sentence better than his negotiated plea, particularly in light of (1) the weight of the

13

prosecution's evidence (see, Lopez v. Artus, 2005 WL 957341, at * 12); (2) his own admissions of guilt (see, United States v. Berger, 826 F. Supp. 100, 104 (S.D.N.Y. 1993)); (3) the advantageous nature of his plea agreement (see, Lopez, 2005 WL 957341 at * 12); and (4) the voluntary nature of his pleas (see, United States v. Hernandez, 242 F.3d 110, 112-13 (2d Cir. 2001)).

First, the relevant state court decisions, together with the papers submitted on the underlying vacatur motions, including Burke's Affirmation and the District Attorney's papers, establish that the evidence against Reznikov was, in fact, strong. See Lopez, 2005 WL 957341 at *33-34 (where, evidence of a defendant's guilt is overwhelming, the burden of demonstrating prejudice to satisfy the second Strickland prong is virtually insurmountable). For example, with respect to the 5143 Indictment, a search of Reznikov's home revealed 303 Ecstasy pills and 24 oxycodone pills, together with various paraphernalia used to weigh and package drugs. In addition, a search of Reznikov's person revealed 43 additional Ecstasy pills and over $400 dollars in cash: all indicative of a significant drug selling operation. While out on bail, Reznikov participated in three separate sales of cocaine to undercover police officers. In those transactions, Reznikov actively sold quantities of cocaine greater than two ounces to undercover police officers. First, on August 10, 2001, in exchange for $1,100; then again on August 17, 2001, in exchange for $2,750; and, on August 24, 2001, yet again, in exchange for $4,400. These acts resulted in his arrest and indictment on the 15 criminal counts charged in 8188 Indictment. 5143 Decision at 3.

Second, the record indicates that at no point did Reznikov deny any of the criminal charges, but rather "from the outset ... admitted his involvement in the charged crimes," therefore controverting any prejudice claim. See Berger, 826 F. Supp. at 104 (withdrawal of

guilty plea on grounds of ineffective assistance of counsel denied where record devoid of any prejudice to defendant and defendant did not suggest that he was not guilty).

Third, as stated above, the negotiated plea agreement provided Reznikov a significant strategic benefit. That fact alone militates against any finding of ineffective assistance and belies any claim of prejudice. 5143 Decision at 9; Lopez, 2005 WL 957341 at * 12 (denying ineffective assistance claim in light of advantageous plea resulting in reduced and concurrent sentences); Nicholas, 2007 WL 1213471 at *12 (finding lack of prejudice where circumstances indicated that petitioner had ample motivation to plead guilty); Agyekum v. U.S., No. 01 Civ. 5808(RWS), 2002 WL 1000950, at *7 (S.D.N.Y. May 16, 2002) (denying ineffective assistance claim, noting the various benefits the defendant secured); Feliz v. United States, Nos. 01 Civ. 5544(JFK), 00 Cr. 53(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. Aug.22, 2002) ("No prejudice exists when a plea agreement lessens the severity of the sentence defendant would face if convicted at trial") (citing Moran v. United States, No. 96 Civ. 3657(CSH), 1998 WL 54616, at *5 (S.D.N.Y. Feb.10, 1998)).

Fourth, Reznikov's affirmative in-court representations as to the knowing and voluntary nature of his respective pleas undercut any prejudice claim. See Hernandez, 242 F.3d at 112-13 (holding that trial court was entitlement "... to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal ..., and had been made no promises except those contained in the plea agreement."); United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (per curiam) (rejecting the defendant's assertion that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during

the plea colloquy); United States v. Torres, 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea"). Because "[s]olemn declarations in open court carry a strong presumption of verity," this Court cannot find that the state courts acted unreasonably to the extent their respective holdings are predicated, at least in part, upon Reznikov's own admissions to deny his ineffective assistance claims. Blackledge v. Allison, 431 U.S. 63, 74 (1977). As prejudice cannot be established, Reznikov fails to satisfy his burden under Strickland's necessary second prong.

## CONCLUSION

For the reasons above, the instant Petitions for habeas corpus relief are DENIED and the Petitions are hereby DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
February 20, 2009

ROSLYNN R. MAUSKOPF
United States District Judge